UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFONSO N. GARCIA, ) | Case No. CV 08-3237 JC |
| Plaintiff, ) ) | |
| v. ) ) | MEMORANDUM OPINION AND ORDER OF REMAND |
| ) ) | |
| MICHAEL J. ASTRUE, ) Commissioner of Social ) Security, ) | |
| ) | |
| Defendant. ) | |

## I. SUMMARY

On May 15, 2008, plaintiff Alfonso N. Garcia ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; May 21, 2008 Case Management Order, ¶ 5.

///

1  Based on the record as a whole and the applicable law, the decision of the
2  Commissioner is REVERSED AND REMANDED for further proceedings
3  consistent with this Memorandum and Opinion and Order of Remand because the
4  Administrative Law Judge ("ALJ") failed to provide legally sufficient reasons for
5  rejecting the opinion of a treating physician.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On March 14, 2005, plaintiff filed an application for Disability Insurance Benefits. (Administrative Record ("AR") 70-74). Plaintiff asserted that he became disabled on May 1, 2002, due to a back injury. (AR 23, 500).[1] The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on November 2, 2006. (AR 515-44).

On March 30, 2007, the ALJ determined that plaintiff was disabled from May 1, 2002 through May 18, 2006, but was not disabled at any time thereafter. (AR 27-37). With respect to the period of May 19, 2006 to the date of the decision, the ALJ found: (1) plaintiff suffered from the following severe impairments: status post fusion surgery at L5-S1 and S1 radiculopathy bilaterally (AR 27); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 27, 33); (3) plaintiff could perform the full range of light work[2] (AR 34); (4) plaintiff could not perform his past relevant work (AR 36); (5) plaintiff could perform work that

---

[1] Plaintiff initially alleged that he became disabled on April 24, 2001. (AR 23 n.1, 75). Plaintiff later changed his onset date of disability to May 1, 2002. (AR 23, 500).

[2] Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

exists in significant number in the national economy[3] (AR 36); and (7) plaintiff's allegations regarding his limitations were not entirely credible. (AR 34-36).

The Appeals Council denied plaintiff's application for review. (AR 4-7).

## III.  APPLICABLE LEGAL STANDARDS

### A.  Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

///
///

---

[3]The ALJ's finding was based upon Rule 202.14 of the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the "Grids"). (AR 36). However, relying on the testimony of a vocational expert, the ALJ found that even if she were to consider additional limitations – specifically, that plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; could stand or walk two to four hours in an eight-hour workday; could sit six hours in an eight-hour workday; could not climb a ladder, rope, or scaffold; could occasionally climb a ramp or stair, balance, stoop, kneel, crouch, and crawl; and must avoid unprotected heights and uneven terrain – plaintiff would still be able to perform work that exists in significant numbers in the national economy, such as that of an assembler, a visual inspector, and a film touch up inspector. (AR 36-37, 537-38).

    (2)    Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

    (3)    Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

    (4)    Does the claimant possess the residual functional capacity to perform his past relevant work?[4] If so, the claimant is not disabled. If not, proceed to step five.

    (5)    Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

    The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.  Standard of Review**

    Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.

---

[4] Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. § 404.1545(a).

2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV.  DISCUSSION

### A.  The ALJ Failed Properly to Consider the Opinions of Dr. Michael Schiffman and Dr. Ralph Steiger

Plaintiff argues that the ALJ erred in rejecting the opinions of Dr. Michael Schiffman and Dr. Ralph Steiger, whose opinions reflected ongoing disability beyond May 19, 2006.  (Plaintiff's Motion at 22-25).  For the reasons discussed below, this Court agrees that the ALJ materially erred in at least her assessment of Dr. Schiffman's opinion.

#### 1.  Pertinent Facts

##### a.  Treating Physicians - Dr. Edward Stokes and Dr. Michael Schiffman

Dr. Edward Stokes and Dr. Michael Schiffman treated plaintiff for symptoms related to his back pain in connection with his workers' compensation claim.  Dr. Stokes saw plaintiff on more than 25 occasions between May 2002 and March 2005, and also saw plaintiff on May 19, 2006.  Dr. Schiffman saw plaintiff

on more than 25 occasions between approximately October 2002 and April 2006, and also saw plaintiff on June 27, 2006.

On May 24, 2002, plaintiff presented to Dr. Stokes with complaints of lower back and lower extremity pain with numbness in his right calf and toes and tingling sensations in his left leg.  (AR 207).  A physical examination of the lumbar spine revealed:  palpable tenderness and spasm from L3 to S1 bilaterally; limited ranges of motion; positive straight leg raising on the right; positive Lasegue's test on the right; positive Kernig's test; and diminished sensation in a "stocking like pattern" bilaterally.  (AR 210).  Dr. Stokes noted that x-rays of the lumbar spine showed degenerative changes.  (AR 211).  He diagnosed plaintiff with myofascial strain of the lumbar spine and found plaintiff temporarily totally disabled.  (AR 211-12).

An MRI of plaintiff's lumbar spine taken on July 11, 2002 showed a 5mm disc herniation at L5-S1, which was indenting the anterior thecal sac, and mild hypertrophic changes at L3-4 and L4-5.  (AR 177).  Nerve conduction studies performed on July 29, 2002 indicated bilateral S1 radiculopathy and either anterior tarsal tunnel syndrome or atrophy of the right extensor digitorum brevis muscle. (AR 497-99).

On September 13, 2002, Dr. Stokes observed a limited range of motion of the lumbar spine and bilateral straight leg raising.  (AR 203).  He diagnosed myofascial strain of the lumbar spine and 5mm disc bulge at L5-S1.  (AR 203). Dr. Stokes referred plaintiff to Dr. Schiffman for surgical consultation.  (AR 203, 363-66).

On October 1, 2002, Dr. Schiffman physically examined plaintiff and observed that plaintiff had difficulty changing positions (*i.e.*, prone to supine and sitting to standing), an antalgic gait with shortened stride length, limited flexion, positive nerve root signs on the right with mild weakness and diminished sensation in an S1 root distribution, and pain when performing disc deforming

tests. (AR 364). He diagnosed plaintiff with acute post-traumatic lumbar disc herniation at L5-S1. (AR 364). Dr. Schiffman recommended that plaintiff undergo a discogram. (AR 365). On October 29, 2002, after receiving the results of the discogram, Dr. Schiffman recommended that plaintiff undergo an anterior lumbar interbody fusion at L5-S1. (AR 360-61). He noted that plaintiff remained temporarily totally disabled. (AR 361).

On January 3, 2003, plaintiff presented to Dr. Stokes with complaints of lower back and lower extremity pain. (AR 200). Dr. Stokes observed that plaintiff used a cane to walk and had tenderness and spasm in his lumbar paraspinal muscle with positive straight leg raising. (AR 200). Dr. Stokes noted that plaintiff's disability status was to be continued. (AR 201). On February 7, 2003, plaintiff complained of increased lower back pain which radiated down to his legs. (AR 198). A physical examination conducted by Dr. Stokes on March 14, 2003 revealed positive straight leg raising and sciatic notch tenderness. (AR 196).

On February 9, 2004, Dr. Schiffman performed an anterior lumbar interbody fusion at L5-S1. (AR 115-16). Plaintiff was able to walk with a brace and walker and was discharged on February 11, 2004. (AR 114). On February 18, 2004, plaintiff returned with complaints of postoperative pain and soreness. (AR 338). Dr. Schiffman encouraged plaintiff to gradually discontinue his use of the walker. (AR 339). Dr. Schiffman affirmed his assessment that plaintiff was temporarily totally disabled. (AR 339).

From March 21, 2004 through September 21, 2004, plaintiff reported to Dr. Schiffman that his lower back pain was improving but that he still suffered from constant pain radiating into his legs and/or weakness in his legs. (AR 321, 324, 330, 334). X-rays of the lumbar spine showed "satisfactory position and alignment." (AR 321, 325, 335). However, on October 13, 2004, plaintiff reported that his lower back pain had worsened. (AR 318). A physical

examination revealed limited forward flexion and extension and slightly hyperactive ankle reflexes. (AR 318). Dr. Schiffman recommended, *inter alia*, nerve conduction studies to further evaluate plaintiff's neurological symptoms. (AR 319). Nerve conduction studies performed on October 19, 2004 suggested bilateral S1 neuropathy as well as either anterior tarsal tunnel syndrome or atrophy of the right extensor digitorum brevis muscle. (AR 174-76). On November 24, 2004, plaintiff reported that his lower back symptoms remained unchanged. (AR 314). He stated that his lower back pain radiated down his lower legs to his feet and that he experienced weakness in both legs. (AR 314). Based on the October 19, 2004 nerve conduction studies, Dr. Schiffman diagnosed plaintiff with bilateral S1 radiculopathy and tarsal tunnel syndrome on the right. (AR 314).

On January 28, 2005, plaintiff presented to Dr. Stokes with complaints that his back pain had become worse with the colder weather. (AR 168). Dr. Stokes observed that plaintiff walked with a cane and had tenderness and spasm in the lumbar spine. (AR 168). Plaintiff was found to be temporarily totally disabled. (AR 168). On March 4, 2005, Dr. Stokes noted that plaintiff had tenderness and spasm in the lumbar spine and diminished strength in the lower extremity. (AR 166). He found that plaintiff continued to be temporarily totally disabled. (AR 166).

On March 9, 2005, Dr. Schiffman administered a nerve root and facet block. (AR 215-16). However, on March 21, 2005, plaintiff reported that he experienced no relief from the nerve block and that his pain had become worse. (AR 303). On May 2, 2005, plaintiff continued to complain of lower back and lower extremity pain with numbness and tingling. (AR 300). Dr. Schiffman observed that plaintiff had difficulty rising from a seated position, an antalgic gait to the right, and limited forward and lateral flexion. (AR 300). He diagnosed plaintiff with status post anterior lumbar interbody fusion and complex regional pain syndrome (based on temperature, skin, and hair pattern changes in the lower extremities). (AR

301). Dr. Schiffman recommended that plaintiff undergo a lumbar sympathetic block. (AR 301). Electrodiagnostic studies conducted on July 7, 2005 were consistent with S1 radiculopathy on the right and L4 and/or L5 pathology. (AR 474).

On December 20, 2005, plaintiff underwent a lumbar sympathetic block. (AR 283). However, on January 10, 2006, plaintiff reported to Dr. Schiffman that the sympathetic block did not reduce his pain. (AR 283). Dr. Schiffman noted that plaintiff continued to complain of constant lower back pain that radiated down the front of his legs to the bottom of his feet. (AR 283). Dr. Schiffman observed that plaintiff had difficulty rising from a seated position and plaintiff's gait was right antalgic, stiff, and guarded. (AR 284).

On April 4, 2006, plaintiff reported to Dr. Schiffman that his lower back symptoms remained unchanged. (AR 391). Specifically, he complained of "constant slight to intermittent moderate and occasionally severe pain that radiates down his lower extremities to the toes." (AR 391). Plaintiff stated that his leg pain was greater than his lower back pain. (AR 391-92). Dr. Schiffman conducted a physical examination, which revealed that nerve root signs were positive on the right and plaintiff's gait was slow, deliberate, stiff, and guarded. (AR 392).

On May 19, 2006, Dr. Stokes found that plaintiff's condition had become "permanent and stationary." (AR 416-18). Dr. Stokes observed lumbar spasm, loss of range of motion of the lumbar spine, positive straight leg raising, positive Kernig's test, antalgic limp, and inability to perform heel and toe walking. (AR 417). He assessed plaintiff's work restrictions as follows: "[Plaintiff's] lumbar spine requires a disability resulting in limitation to light work. This contemplates the individual can do work in a standing or walking position, with minimum demands for physical effort." (AR 417).

///

On June 27, 2006, Dr. Schiffman noted that plaintiff continued to complain of "constant slight to intermittent moderate and occasionally severe low back pain that radiated down the lower extremities with numbness and tingling." (AR 382-83). A physical examination of plaintiff's lumbar spine revealed limited forward flexion, extension, and lateral flexion; inability to walk on heels and toes without evidence of weakness; right antalgic gait; and diminished lower extremity reflexes. (AR 383). Dr. Schiffman diagnosed plaintiff with, *inter alia*, status post anterior lumbar interbody fusion and complex regional pain syndrome. (AR 383). Dr. Schiffman opined that plaintiff was precluded from lifting more than ten pounds; forceful pushing and pulling; repetitive bending and stooping; and sitting, standing, or walking for greater than one hour without a break. (AR 384).

### b.     Examining Physician  - Dr. Ralph Steiger

On May 30, 2006, Dr. Ralph Steiger, an orthopedic surgeon, examined plaintiff. (AR 368-72). Dr. Steiger observed the following: antalgic gait on the right; bilateral tenderness of the posterior superior iliac spine; limited lumbar motion in all planes; inability to perform heel and toe walking; diminished deep tendon reflexes and absent ankle reflexes; diminished sensation in both feet; positive straight leg raising bilaterally in both supine and sitting positions; difficulty with fine toe movement; positive Lasegue's test bilaterally; and atrophy of the right thigh, knee, calf, and ankle. (AR 370-71). Dr. Steiger also reviewed the medical records from Drs. Schiffman and Stokes. (AR 368-69, 371). Dr. Steiger then diagnosed plaintiff with lumbar spine sprain with lower extremity radiculitis, status post anterior lumbar interbody fusion at L5-S1, complex regional pain syndrome, tarsal tunnel syndrome, and S1 bilateral radiculopathy. (AR 372). He assessed plaintiff's work function as follows:

> [Plaintiff] has restrictions of no heavy lifting, repeated bending or stooping, no prolonged sitting, no prolonged standing or walking and no repetitive twisting.

> [Plaintiff's] low back condition is permanent and will not change. His condition will remain the same. [Plaintiff] is unable to perform full time competitive work. This disability has lasted at least 12 months and is expected to continue indefinitely.

(AR 372).

### 2. Applicable Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[5] See id. In general, the opinion of a treating physician is entitled to greater weight than that of a nontreating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d

---

[5]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

11

759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted). The ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of another examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion -- court may draw specific and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir.1988). "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct." Id. "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

When there are conflicting medical assessments by two physicians whose opinions are entitled to equal weight, it is within the ALJ's discretion to resolve the conflict. See Thomas, 278 F.3d at 956-57. Even where two treating physicians disagree, however, the ALJ must still articulate specific, legitimate reasons that are supported by substantial evidence in the record for adopting the opinion of one treating physician over another. See Lester, 81 F.3d at 830-31.

### 3. Analysis

In her decision, the ALJ rejected the opinions of Dr. Schiffman and Dr. Steiger in favor of the opinion of Dr. Stokes, stating, in pertinent part:

///

> The [ALJ] . . . gives the greatest weight to the finding of the treating Workers' Compensation treating doctor, Dr. Stokes, that [plaintiff], as of May 19, 2006, had medical improvement in his condition and regained the capacity to do light work. The treating doctor did not find a need for a cane or other ambulatory device.
>
> The [ALJ] does not give weight to the June 27, 2006 assessment from Dr. Schiffman claiming greater restrictions than found by Dr. Stokes one month before, because there is no evidence of a change in [plaintiff's] condition from the previous month when Dr. Stokes, the treating doctor, found that [plaintiff] had medically improved and could do light work. [Plaintiff] articulated pain complaints to Dr. Schiffman, but such complaints were also articulated to and considered by Dr. Stokes the month before when the doctor found [plaintiff] permanent and stationary in May 2006. In June 2006 Dr. Shiffman [sic] asserted that [plaintiff] now had complex regional pain syndrome, but provided no objective signs or findings to support such a diagnosis. No other doctor, including Dr. Schiffman, ever mentioned such a problem before, except for Dr. Steiger, the doctor to whom [plaintiff] paid $500 for his disability report at the request of [counsel] in May 2006. No doctor, including Dr. Steiger, provided any medical signs or findings to support such a diagnosis. It is reasonable to assume that if there were signs and findings of such a problem existing in May 2006, that Dr. Stokes, the treating doctor, would have noticed them in May 2006 when he gave his permanent and stationary assessment. Thus, the [ALJ] gives greater weight to the final residual functional capacity assessment from the treating doctor than the [ALJ] gives to the findings from the

///

one time examination by Dr. Steiger, a doctor [plaintiff] paid $500 for that report at the direction of [counsel].

(AR 31-32).

The ALJ's reasons for rejecting the opinion of Dr. Schiffman were not legally sufficient. First, the ALJ provided no basis for her apparent belief that Dr. Schiffman's opinion was less reliable because he did not observe a change in plaintiff's condition or provide treatment for complaints that were different than those raised at the time Dr. Stokes rendered his opinion. The ALJ's stated reason rests on an erroneous premise that Dr. Stokes' opinion was inherently more reliable. Given that both physicians were "treating physicians," and had extensively treated plaintiff, the mere fact that they differed in their assessments is not a legitimate basis upon which to favor one over the other.

Second, contrary to the ALJ's contention, Dr. Schiffman did provide objective findings to support his diagnosis of complex regional pain syndrome. Specifically, Dr. Schiffman observed skin and hair pattern changes in the shin area which were indicative of such a diagnosis.[6] (AR 301). Thus, the ALJ's finding that Dr. Schiffman's diagnosis of complex regional pain syndrome was not supported by objective evidence did not constitute a specific and legitimate reason for rejection.

With respect to Dr. Steiger's opinion, the ALJ erred in rejecting Dr. Steiger's opinion based on the fact that he had been paid by plaintiff's attorney for his report. Id. at 832 (holding that the ALJ improperly rejected a physician's reports because they "were clearly obtained by the claimant's attorney for the purpose of litigation" and noting that "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them"). This error,

---

[6]Dr. Schiffman administered a lumbar sympathetic block to rule out complex regional pain syndrome. (AR 293). Although plaintiff reported that the treatment did not reduce his pain, Dr. Schiffman did not expressly rule out the diagnosis. (AR 283).

however, was not material as the other reason articulated by the ALJ for discounting such doctor's opinion – the fact that he examined plaintiff only once – does constitute an appropriate basis upon which to favor Dr. Stokes' opinion over that of Dr. Steiger. See Lester, 81 F.3d at 830. However, in light of the fact that this case must be remanded for reconsideration of Dr. Schiffman's opinion, and given that Dr. Steiger's finding (i.e., that plaintiff was unable to perform full time competitive work) supported Dr. Schiffman's opinion, the ALJ should reevaluate Dr. Steiger's opinion on remand.[7]

As the ALJ did not articulate specific and legitimate reasons which are supported by substantial evidence to reject the opinion of Dr. Schiffman in favor of Dr. Stokes' opinion, a remand is appropriate for further consideration of such opinion.[8]

---

[7]Although Dr. Steiger initially assessed work limitations that suggested that plaintiff could return to work (i.e., restricted to no heavy lifting; no repeated bending or stooping; no prolonged sitting, standing, or walking; and no repetitive twisting), he subsequently concluded that plaintiff was unable to perform full time competitive work. (AR 372). On remand, to the extent that the ALJ interprets Dr. Steiger's opinion to mean that plaintiff had functional limitations that did not preclude him from all competitive work, the ALJ should further develop the record by contacting Dr. Steiger. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001) (ALJs duty to develop record further is triggered only when there is ambiguous evidence or when record is inadequate to allow for proper evaluation of evidence.) (citation omitted).

[8]Plaintiff also contends that the ALJ misinterpreted the opinion of Dr. Stokes, who provided treatment in connection with plaintiff's workers' compensation claim. (Plaintiff's Motion at 16-22). Specifically, plaintiff contends that the ALJ erroneously interpreted Dr. Stokes' May 19, 2006 opinion to mean that plaintiff's condition had improved as of that date such that he could perform "light" work. (Plaintiff's Motion at 16-22).

The terms of art used in California workers' compensation claims are not equivalent to Social Security disability terminology. Booth v. Barnhart, 181 F. Supp. 2d 1099, 1104 (C.D. Cal. 2002) (citing Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996); Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573, 576 (9th Cir. 1988)). As observed by the Ninth Circuit:

> Under the California workers' compensation guidelines, a claimant incapable of performing "heavy" work may be capable of performing "light," "semi-sedentary," or "sedentary" work. None of these three categories, however, is based on strength. Rather, they turn on whether a claimant sits, stands, or walks for most of the day. Each entails a "minimum of demands for physical effort."

(continued...)

## V.     CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[9]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   August 25, 2009

                                                    /s/
                                    Honorable Jacqueline Chooljian
                                    UNITED STATES MAGISTRATE JUDGE

---

[8](...continued)
The categories of work under the Social Security disability scheme are measured quite differently. They are differentiated primarily by step increases in lifting capacities.

Desrosiers, 846 F.2d at 576 (internal citation omitted); see also Glass v. Workers' Compensation Appeals Board, 105 Cal. App. 3d 297, 302 (1980) n.1 (quoting and discussing the "Schedule for Rating Permanent Disabilities Under Provisions of the Labor Code of the State of California" (hereinafter "Rating Schedule")). Therefore, the ALJ must consider these differences when analyzing medical opinions. Booth, 181 F. Supp. 2d at 1106. As this Court held in Booth:

> While the ALJ's decision need not contain an explicit "translation," it should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence.

Id. at 1106.

On remand, the ALJ should explain the basis for any material inference she has drawn from Dr. Stokes' opinion to facilitate meaningful judicial review to the extent such review may become necessary.

[9]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).